**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
Chapter 7 Trustee of National Events Holdings LLC, *et al.*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
David J. Mahoney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

In re:

NATIONAL EVENTS HOLDINGS, LLC, *et al.*,

Debtors.

Chapter 7
Case No.: 17-11556 (JLG)
(Jointly Administered)

-------------------------------------------------------------------------- X
KENNETH P. SILVERMAN, ESQ., THE CHAPTER 7
TRUSTEE OF THE JOINTLY ADMINISTERED
ESTATES OF NATIONAL EVENTS HOLDINGS, LLC, *et al.*,

Adv. Proc. No.: _____

Plaintiff,
-against-

ERIC STERN,

Defendant.
--------------------------------------------------------------------------X

# COMPLAINT

Plaintiff, Kenneth P. Silverman, Esq. ("**Silverman**"), the Chapter 7 Trustee of the jointly administered estates of National Events Holdings, LLC, National Event Company II, LLC, National Event Company III, LLC, National Events Intermediate, LLC, World Events Group, LLC,[1] National Events of America. Inc., and New World Events Group, Inc.[2] (collectively referred to hereinafter as the "**Debtors**[3]"), by his attorneys, SilvermanAcampora LLP, for his

---

[1] National Events Holdings, LLC, National Event Company II, LLC, National Event Company III, LLC, National Events Intermediate, LLC, World Events Group, LLC are collectively referred to herein as (the "**LLC Debtors**").

[2] National Events of America, Inc., and New World Events Group, Inc., are collectively referred to herein as (the "**Corporate Debtors**").

[3] The defined term "Debtors" includes within its scope predecessor-in-interest entities.

complaint (the "**Complaint**") against defendant, Eric Stern ("**Defendant**") alleges as follows:

**The Nature of This Action**

1. On May 31, 2017, Jason Nissen ("**Nissen**"), the Debtors' former Chief Executive Officer and/or Managing Member, was arrested and charged by the Federal Bureau of Investigation (the "**FBI**") with allegedly defrauding victims of at least $70 million through a Ponzi scheme.

2. Nissen represented to victims that he would use money lent to him and to the Debtors to purchase bulk quantities of premium tickets to sporting and entertainment events even though Nissen and the Debtors used that money in large part to repay other victims and to enrich Nissen.

3. Nissen presented to his victims falsified financial documents and inflated accounts receivable ledgers as purported proof that their money was being used to purchase tickets for resale.

4. On June 5, 2017 (the "**LLC Debtors' Filing Date**"), the LLC Debtors commenced voluntary bankruptcy proceedings.

5. On June 28, 2017 (the "**Corporate Debtors' Filing Date**"[4]), the Corporate Debtors commenced voluntary bankruptcy proceedings.

6. On March 28, 2018, Nissen pled guilty to wire fraud in connection with the charges brought against him in federal court.

7. On February 11, 2019, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (a) providing for the agreed allocation and payment of certain claims, (b) converting the Corporate Debtors' cases to chapter 7 cases, (c)

---

[4] The LLC Debtors' Filing Date and the Corporate Debtors' Filing Date are, at times, referred to collectively as the "**Filing Dates**."

providing for the appointment of the trustee in the Corporate Debtor's cases, (d) directing the joint administration of all of the chapter 7 cases, and (e) granting related relief (the "Joint Administration Order"). [Dkt. No. 513]

8. Over the final six years that the Debtors operated, Defendant received transfers from debtor National Event Company II, LLC ("**NEC II**"), net of any transfers it made to NEC II totaling no less than $135,000 (the "**NEC II Transfers**").

9. Over the final six years that the Debtors operated, Defendant received transfers from debtor World Events Group, Inc. ("**WEG**"), net of any transfers it made to WEG, totaling no less than $10,000 (the "**WEG Transfers**").

10. Over the final six years that the Debtors operated, Defendant received transfers from debtor National Events of America, Inc. ("**NEA**" and collectively with NEC II and WEG, the "Transferring Debtors"), net of any transfers it made to NEA, totaling no less than $20,000 (the "**NEA Transfers**" and collectively with the NEC II Transfers and WEG Transfers, the "**Transfers"**).

11. Through this Complaint, the Trustee seeks to avoid and recover the Transfers and the Subsequent Transfers, which in the aggregate, total no less than $165,000, from Defendant.

## Jurisdiction and Venue

12. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b).

13. This adversary proceeding has been referred to the Court pursuant to 28 U.S.C. §157(a) and the Amended Standing Order of Reference, M-431 dated January 31, 2012, of the United States District Court for the Southern District of New York.

14. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (F), (H), and (O).

15. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

## The Parties

16. Plaintiff Silverman is the Chapter 7 Trustee of the Debtors and brings this action in his capacity as Chapter 7 Trustee of the Transferring Debtors.

17. At all times relevant, Defendant is an individual, believed to be living in the state of New York.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The Debtors' Business

18. The Debtors' primary business was ticket brokerage and the sale of event tickets on the secondary market for concert, theater and sporting events, as well as the sale and promotion of V.I.P. hospitality packages providing exclusive access to big name events, with those packages including hotel accommodations, celebrity "meet and greet" events and exclusive parties.

19. The secondary market constitutes the marketplace from which individuals and entities purchase event tickets when the primary marketplace, such as Ticketmaster, Telecharge, or the teams or event venues are sold out of or do not offer the type of ticket desired.

20. The Debtors stocked premium tickets to concerts, Broadway theatre, red carpet premieres and sporting events worldwide. The Debtors had one of the largest inventories for such events nationwide and provided personal on-site assistance at events.

21. Initially, the Debtors would purchase tickets for resale on the secondary marketplace through Ticketmaster and through "non-traditional" channels.

22. As the Debtors' business developed, the Debtors purchased tickets directly from sports teams and sports leagues in bulk.

23. The Debtors were among the first ticket companies to purchase tickets directly, "through the front door," with official sponsorships with National Football League ("**NFL**") teams.

24. Those sponsorships allowed the Debtors to obtain large groups of Super Bowl tickets directly from NFL teams and to run travel plan programs for NFL teams when they played road games.

25. The Debtors also offered fan travel and corporate hospitality for major events other than the Super Bowl, including the National Collegiate Athletic Association ("**NCAA**") Final Four, the Masters Golf Tournament, and the Kentucky Derby.

26. Historically, the Debtors' business was funded by financing provided via trusted relationships with "friends and family" third parties ("**Funding Parties**") who financed ticket purchases to major events such as the World Cup and the Super Bowl on the condition that those "friends" receive an outsized percentage of gross profit margin on the "deals" they had funded.

27. In or before 2015, the Debtors' repayment obligations on financing arrangements with the Funding Parties became unsustainable and the Debtors began to satisfy those obligations by fraudulently diverting funds received as new investments (intended to purchase tickets) to satisfy antecedent debts.

**Falcon Strategic Partners IV, LP Funding of,
and Investment in, the LLC Debtors**

28. In or about April 2015, Falcon Strategic Partners IV, LP ("**Falcon**") provided Nissen with a financing proposal, subject to due diligence, whereby Falcon would arrange for an up to $60 million financing in the LLC Debtors.

29. Thereafter, Falcon entered into a Purchase Agreement dated July 6, 2015, and related documentation, including a Credit Agreement, with the LLC Debtors, whereby Falcon

agreed to purchase from the LLC Debtors: (a) up to $25 million of 11% Senior Secured Notes due 2020 (the "**Secured Loan**"), (b) up to $15 million of 8% Senior Unsecured PIK Notes due 2022 (the "**Unsecured Loan**"), and (c) 48 Class A Units representing membership interests in NEH (the "**Falcon Equity**").

30. The LLC Debtors granted to Falcon security interests in substantially all of the LLC Debtors' assets as collateral for the Secured Loan.

31. Thereafter, Falcon loaned to the LLC Debtors the sum of $29 million as a Secured Loan, and $15 million as an Unsecured Loan.

32. As of the Filing Date (as hereinafter defined), the LLC Debtors owed Falcon nearly $30 million on the Secured Loan and more than $17 million on the Unsecured Loan.

33. Prior to the infusion of funds by Falcon, Nissen owned 100% of National Events of America, Inc. and 100% of World Events Group, Inc. In turn, National Events of America, Inc. owned 100% of National Events Company II, LLC and 100% of National Events Company III, LLC. World Events Group, Inc. owned 100% of Ultimatefan.com.

34. After the Falcon transaction, the ownership structure of the LLC Debtors and of the Corporate Debtors was as follows:

    a. World Events Group, Inc. merged into World Events Group II, LLC, and a new entity, New World Events Group, Inc. (owned 100% by Nissen) was formed;

    b. Falcon Strategic Partner IV, LP (24%), National Events of America, Inc. (75%), and New World Events Group, Inc. (1%) owned 100% of National Events Holdings, LLC;

    c. National Events Holdings, LLC owned 100% of National Events Intermediate, LLC; and

    d. National Events Intermediate, LLC owned (i) 100% of National Event Company II, LLC (which owned 40% of Concierge Live, LLC), (ii) 100% of National Event Company III, LLC, (iii) 50% of Winter Music Festivals, LLC, and (iv) 100% of World Events

Group II, LLC (which owned 100% of the Ultimate Fan.com).

35. Nissen continued to control the operations of the Debtors.

### **Nissen's Arrest and Guilty Plea**

36. On May 31, 2017, Nissen was arrested and charged by the FBI with defrauding victims of at least $70 million through a Ponzi scheme. Thereafter, a Federal Complaint was filed against Nissen which charged him with one count of Wire Fraud in violation of 18 USC §1342 (the "**Federal Complaint**").

37. Nissen surrendered to federal authorities.

38. On March 28, 2018, Nissen pled guilty to one count of wire fraud.

39. The Federal Complaint alleges that from at least in or about 2015, up to and including the point in time at which the Debtors' bankruptcy cases were commenced, Nissen engaged in a scheme to obtain money and property by means of fraud and false and fraudulent pretenses, defrauding victims of at least $75 million.

40. Specifically, the Federal Complaint charged that Nissen solicited tens of millions of dollars from lenders [including, but not necessarily limited to Defendant and other Funding Parties] by falsely representing that Nissen would use the lenders' money to purchase and re-sell wholesale quantities of premium tickets for sporting and entertainment events, when, in truth and in fact, Nissen used the lenders' money to repay other lenders and enrich himself.

41. The Federal Complaint also charges that Nissen induced victims to enter into credit agreements, under which the money obtained from the victims was to be used for the specific purposes of purchasing ticket inventory, including for designated events.

42. According to the Federal Complaint, Nissen falsified financial documents and inflated accounts receivable ledgers, which Nissen presented to victims as proof that their money was being used to purchase tickets for resale.

43. The Federal Complaint further alleges that Nissen admitted to one of his victims in early May 2017 that he had been operating a "Ponzi Scheme" and had committed fraud.

44. After Nissen's arrest by the FBI, on June 1, 2017, certain victims of the Ponzi scheme commenced state court litigation which resulted in the appointment of Edward J. LoBello, Esq. as temporary receiver (the "**Receiver**") on June 5, 2017.

### The Bankruptcy Cases

45. On the LLC Debtors' Filing Date, the LLC Debtors filed voluntary petitions for relief under chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

46. By Order dated June 13, 2017, the Bankruptcy Court entered an Order for the joint administration of the LLC Debtors' estates (*see* Dkt. No. 20 in Case No. 17-11556).

47. On the Corporate Debtors' Filing Date, the Receiver filed with the Bankruptcy Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code for the Corporate Debtors. Pursuant to a Stipulation and Order entered by the Bankruptcy Court, the Receiver thereafter administered the Corporate Debtors' jointly administered bankruptcy cases as estate fiduciary (the "**Estate Fiduciary**") (*see* Dkt. No. 54 in Case No. 17-11798) until February 11, 2019.

48. By Order of the Bankruptcy Court dated August 7, 2017, the LLC Debtors' chapter 11 cases were converted to chapter 7 liquidation proceedings (*see* Dkt. No. 143 in Case No. 17-11556), and by Notice of Appointment that same date, Kenneth P. Silverman, Esq., was appointed Interim Trustee in the LLC Debtors' cases and has since become the permanent trustee (*see* Dkt. No. 144 in Case No. 17-11556).

49. On February 11, 2019, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the Joint Administration Order. Thereafter, the

Office of the United States Trustee appointed the Trustee as chapter 7 trustee of the Corporate Debtors' jointly administered estates.

50. At the time that each of the Transfers was made, Nissen was engaged in a Ponzi-type scheme to defraud the Debtors' legitimate creditors.

51. At times, Nissen would aggregate funds in the Debtors' bank accounts funds without regard to the source of those funds. Nissen would then use those integrated funds to pay the Debtors' creditors and/or investors as part of multi-stepped, integrated transactions, designed to disguise the Debtors' financial obligations and activities.

52. The multi-stepped transactions were part of a scheme to defraud the Debtors' creditors and/or investors.

53. Insofar as each of the Transferring Debtors transferred significantly more to Defendant than it received from Defendant, the Transfers were made for no consideration or less than reasonably equivalent value.

54. The Transferring Debtors were either insolvent at the times the Transfers were made, or were rendered insolvent as a result of the Transfers.

55. At the times the Transfers were made, there existed unsecured creditors of the Transferring Debtors who remained unsecured creditors as of the Filing Dates.

**First Claim for Relief**
(incorporating all previous allegations)

56. The NEC II Transfers were made with the actual intent to hinder, delay or defraud NEC II's creditors.

57. The NEC II Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §276.

58. Based upon the foregoing, the Trustee is entitled to judgment (a) avoiding The

NEC II Transfers pursuant to New York State Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, may recover from Defendant an amount as yet undetermined but which is equal to any and all sums paid by NEC II to Defendant which amount is, in no event, less than $135,000, plus interest thereon, and may recover attorneys' fees pursuant to New York Debtor and Creditor Law §276-A.

**Second Claim for Relief**
(incorporating all previous allegations)

59. The NEC II Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §273.

60. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The NEC II Transfers pursuant to New York Debtor and Creditor Law §273, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEC II to Defendant which amount is, in no event, less than $135,000, plus appropriate interest thereon.

**Third Claim for Relief**
(incorporating all previous allegations)

61. Upon information and belief, at the time of the NEC II Transfers, NEC II was engaged or about to engage in a business or transaction for which the property remaining in its possession after the conveyance was unreasonably small capital.

62. The NEC II Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §274.

63. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The NEC II Transfers pursuant to New York Debtor and Creditor Law §274, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEC II to

Defendant which amount is, in no event, less than $135,000, plus appropriate interest thereon.

**Fourth Claim For Relief**
(incorporating all previous allegations)

64. Upon information and belief, at the time of the NEC II Transfers, NEC II had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as they matured.

65. The NEC II Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §275.

66. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The NEC II Transfers pursuant to New York Debtor and Creditor Law §275, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEC II to Defendant which amount is, in no event, less than $135,000, plus appropriate interest thereon.

**Fifth Claim For Relief**
(incorporating all previous allegations)

67. The NEC II Transfers to Defendant were impermissible transfers of NEC II's interest in property. As a result, Defendant was the ultimate beneficiary of the NEC II Transfers under circumstances in which Defendant would be unjustly enriched if he were to retain such NEC II Transfers since NEC II did not receive reasonably equivalent value for such Transfers.

68. As a result, Defendant has been unjustly enriched and may not in equity and good conscience retain the NEC II Transfers.

69. By reason of the foregoing, Defendant is liable to the Trustee under New York common law for unjust enrichment in an amount as yet undetermined but which is equal to any

and all sums paid to or received by Defendant which amount is, in no event, less than $135,000, plus appropriate interest thereon.

**Sixth Claim for Relief**
(incorporating all previous allegations)

70. The WEG Transfers were made with the actual intent to hinder, delay or defraud WEG's creditors.

71. The WEG Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §276.

72. Based upon the foregoing, the Trustee is entitled to judgment (a) avoiding The WEG Transfers pursuant to New York State Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, may recover from Defendant an amount as yet undetermined but which is equal to any and all sums paid by WEG to Defendant which amount is, in no event, less than $10,000, plus interest thereon, and may recover attorneys' fees pursuant to New York Debtor and Creditor Law §276-A.

**Seventh Claim for Relief**
(incorporating all previous allegations)

73. The WEG Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §273.

74. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The WEG Transfers pursuant to New York Debtor and Creditor Law §273, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by WEG to Defendant which amount is, in no event, less than $10,000, plus appropriate interest thereon.

### Eighth Claim for Relief
(incorporating all previous allegations)

75. Upon information and belief, at the time of the WEG Transfers, WEG was engaged or about to engage in a business or transaction for which the property remaining in its possession after the conveyance was unreasonably small capital.

76. The WEG Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §274.

77. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The WEG Transfers pursuant to New York Debtor and Creditor Law §274, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by WEG to Defendant which amount is, in no event, less than $10,000, plus appropriate interest thereon.

### Ninth Claim For Relief
(incorporating all previous allegations)

78. Upon information and belief, at the time of the WEG Transfers, WEG had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as they matured.

79. The WEG Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §275.

80. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The WEG Transfers pursuant to New York Debtor and Creditor Law §275, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by WEG to Defendant which amount is, in no event, less than $10,000, plus appropriate interest thereon.

### Tenth Claim For Relief
(incorporating all previous allegations)

81. The WEG Transfers to Defendant were impermissible transfers of WEG's interest in property. As a result, Defendant was the ultimate beneficiary of the WEG Transfers under circumstances in which Defendant would be unjustly enriched if he were to retain such WEG Transfers since WEG did not receive reasonably equivalent value for such Transfers.

82. As a result, Defendant has been unjustly enriched and may not in equity and good conscience retain the WEG Transfers.

83. By reason of the foregoing, Defendant is liable to the Trustee under New York common law for unjust enrichment in an amount as yet undetermined but which is equal to any and all sums paid to or received by Defendant which amount is, in no event, less than $10,000, plus appropriate interest thereon.

### Eleventh Claim for Relief
(incorporating all previous allegations)

84. The NEA Transfers were made with the actual intent to hinder, delay or defraud NEA's creditors.

85. The NEA Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §276.

86. Based upon the foregoing, the Trustee is entitled to judgment (a) avoiding The NEA Transfers pursuant to New York State Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, may recover from Defendant an amount as yet undetermined but which is equal to any and all sums paid by NEA to Defendant which amount is, in no event, less than $20,000, plus interest thereon, and may recover attorneys' fees pursuant to New York Debtor and Creditor Law §276-A.

## Twelfth Claim for Relief
(incorporating all previous allegations)

87. The NEA Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §273.

88. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The NEA Transfers pursuant to New York Debtor and Creditor Law §273, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEA to Defendant which amount is, in no event, less than $20,000, plus appropriate interest thereon.

## Thirteenth Claim for Relief
(incorporating all previous allegations)

89. Upon information and belief, at the time of the NEA Transfers, NEA was engaged or about to engage in a business or transaction for which the property remaining in its possession after the conveyance was unreasonably small capital.

90. The NEA Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §274.

91. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The NEA Transfers pursuant to New York Debtor and Creditor Law §274, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEA to Defendant which amount is, in no event, less than $20,000, plus appropriate interest thereon.

## Fourteenth Claim For Relief
(incorporating all previous allegations)

92. Upon information and belief, at the time of the NEA Transfers, NEA had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay

them as they matured.

93. The NEA Transfers constituted fraudulent conveyances in violation of New York Debtor and Creditor Law §275.

94. By reason of the foregoing, under Bankruptcy Code §544(b), the Trustee is entitled to a judgment (a) avoiding The NEA Transfers pursuant to New York Debtor and Creditor Law §275, and (b) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEA to Defendant which amount is, in no event, less than $20,000, plus appropriate interest thereon.

**Fifteenth Claim For Relief**
(incorporating all previous allegations)

95. The NEA Transfers were made within two (2) years of the Filing Date.

96. The NEA Transfers were made with actual intent to hinder, delay or defraud NEA's creditors under §548(a)(1)(A) of the Bankruptcy Code.

97. The NEA Transfers constitute avoidable transfers pursuant to §548(a)(1)(A) of the Bankruptcy Code. Based upon the foregoing, the Trustee is entitled to a judgment (a) avoiding the NEA Transfers, and (ii) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEA to Defendant within the two years immediately preceding the Filing Date, which amount is, in no event less than $20,000, plus plus appropriate interest thereon.

**Sixteenth Claim For Relief**
(incorporating all previous allegations)

98. NEA received less than reasonably equivalent value in exchange for the NEA Transfers under §548(a)(1)(B) of the Bankruptcy Code.

99. Upon information and belief, NEA (i) was insolvent on the dates that the NEA Transfers were made or became insolvent as a result of the NEA Transfers, (ii) was engaged in

business or a transaction, or was about to engage in business or a transaction, for which any property remaining with NEA was unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as they matured.

100. The NEA Transfers constitute avoidable transfers pursuant to §548 (a)(1)(B) of the Bankruptcy Code. Based upon the foregoing, the Trustee is entitled to a judgment (a) avoiding the NEA Transfers, and (ii) pursuant to 11 U.S.C. §§550(a) and 551, against Defendant in an amount as yet undetermined but which is equal to any and all sums paid by NEA to Defendant within the two years immediately preceding the Filing Date, which amount is, in no event less than $20,000, plus appropriate interest thereon.

### Seventeenth Claim For Relief
(incorporating all previous allegations)

101. The NEA Transfers to Defendant were impermissible transfers of NEA's interest in property. As a result, Defendant was the ultimate beneficiary of the NEA Transfers under circumstances in which Defendant would be unjustly enriched if he were to retain such NEA Transfers since NEA did not receive reasonably equivalent value for such Transfers.

102. As a result, Defendant has been unjustly enriched and may not in equity and good conscience retain the NEA Transfers.

103. By reason of the foregoing, Defendant is liable to the Trustee under New York common law for unjust enrichment in an amount as yet undetermined but which is equal to any and all sums paid to or received by Defendant which amount is, in no event, less than $20,000, plus appropriate interest thereon.

**WHEREFORE**, plaintiff Kenneth P. Silverman, Esq., as Trustee, demands judgment against Defendant:

(a) against Defendant on his first claim for relief (a) avoiding the NEC II Transfers pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $135,000 from Defendant plus appropriate interest thereon and may recover attorneys' fees pursuant to New York Debtor and Creditor Law §276-a;

(b) against Defendant on his second claim for relief (a) avoiding the NEC II Transfers pursuant to New York Debtor and Creditor Law §273, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $135,000 from Defendant plus appropriate interest thereon;

(c) against Defendant on his third claim for relief (a) avoiding the NEC II Transfers pursuant to New York Debtor and Creditor Law §274, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $135,000 from Defendant plus appropriate interest thereon;

(d) against Defendant on his fourth claim for relief (a) avoiding the NEC II Transfers pursuant to New York Debtor and Creditor Law §275, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $135,000 from Defendant plus appropriate interest thereon;

(e) against Defendant on his fifth claim for relief for unjust enrichment under New York common law in an amount to be determined at trial, but in no event less than $135,000 from Defendant plus appropriate interest thereon;

(f) against Defendant on his sixth claim for relief (a) avoiding the WEG Transfers pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $10,000 from Defendant plus appropriate interest thereon and may recover attorneys' fees pursuant to New York Debtor and Creditor Law §276-a;

(g) against Defendant on his seventh claim for relief (a) avoiding the WEG Transfers pursuant to New York Debtor and Creditor Law §273, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $10,000 from Defendant plus appropriate interest thereon;

(h) against Defendant on his eighth claim for relief (a) avoiding the WEG Transfers pursuant to New York Debtor and Creditor Law §274, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $10,000 from Defendant plus appropriate interest thereon;

(i) against Defendant on his ninth claim for relief (a) avoiding the WEG Transfers pursuant to New York Debtor and Creditor Law §275, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $10,000 from Defendant plus appropriate interest thereon;

(j) against Defendant on his tenth claim for relief for unjust enrichment under New York common law in an amount to be determined at trial, but in no event less than $10,000 from Defendant plus appropriate interest thereon;

(k) against Defendant on his eleventh claim for relief (a) avoiding the NEA Transfers pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon and may recover attorneys' fees pursuant to New York Debtor and Creditor Law §276-a;

(l) against Defendant on his twelfth claim for relief (a) avoiding the NEA Transfers pursuant to New York Debtor and Creditor Law §273, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon;

(m) against Defendant on his thirteenth claim for relief (a) avoiding the NEA Transfers pursuant to New York Debtor and Creditor Law §274, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon;

(n) against Defendant on his fourteenth claim for relief (a) avoiding the NEA Transfers pursuant to New York Debtor and Creditor Law §275, and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon;

(o) against Defendant on his fifteenth claim for relief (a) avoiding the NEA Two-Year Transfers pursuant to 11 U.S.C. §548(a)(1)(A), and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon;

(p) against Defendant on his sixteenth claim for relief (a) avoiding the NEA Two-Year Transfers pursuant to 11 U.S.C. §548(a)(1)(B), and (b) pursuant to 11 U.S.C. §§550(a) and 551, recovering an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon;

(q) against Defendant on his seventeenth claim for relief for unjust enrichment under New York common law in an amount to be determined at trial, but in no event less than $20,000 from Defendant plus appropriate interest thereon; and

(r) for such other, further and different relief as the Court deems proper.

Dated: Jericho, New York
June 5, 2019

**SILVERMANACAMPORA LLP**
Attorneys for Plaintiff Kenneth P. Silverman, Esq.
Chapter 7 Trustee


By: _s/ David J. Mahoney_
David J. Mahoney
A Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753